Based upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence AFFIRMS in part and MODIFIES in part the Opinion and Award of the Deputy Commissioner.
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between the plaintiff and defendant-employer.
3. The American Motorist Insurance is the compensation carrier on the risk.
4. The issue for determination is whether the plaintiff sustained compensable injuries to her left hand and shoulder on or about March 2, 1992 and, if so, to what benefits may she be entitled under the Act.
5. A Form 21 agreement was approved by the Industrial Commission on May 15, 1992.
6. The plaintiff's average weekly was is $267.60 yielding a compensation rate of $178.41.
7. Stipulated medical records shall be admitted as evidence as set forth in the Pretrial Agreement.
Based upon all of the competent evidence adduced from the record, the Full Commission makes the following:
FINDINGS OF FADO
1. On or about March 2, 1992, the plaintiff was employed by the defendant-employer as a deck laminator and had been working for defendant-employer for approximately five years. Plaintiff had previously worked for defendant for a period of approximately six years but was laid off and subsequently worked several other places before returning to work for the defendant-employer.
2. On or about March 2, 1992, the plaintiff began to experience pain in her right bicep. The plaintiff reported this pain to her supervisor. A Form 21 agreement was approved by the Industrial Commission on May 15, 1992 wherein defendant accepted liability for an injury of "tendonitis of the right bicep." Based upon the Form 21 agreement, plaintiff's disability began on March 17, 1992; plaintiff returned to work on March 19, 1992; plaintiff became disabled again on March 23, 1992 and again returned to work on April 21, 1992. Based on a subsequent Form 26 agreement approved on June 15, 1992, plaintiff became disabled again on May 15, 1992, and defendant-employer agreed to pay temporary total disability for "necessary weeks." Based upon a second Form 26 agreement approved on August 31, 1992, plaintiff returned to work on June 25, 1992 and became totally disabled on August 13, 1992. Defendant again agreed to pay temporary total disability for "necessary weeks." Although defendant thereafter submitted a Form 28B Report indicating payment of additional periods of temporary total disability with the latest being February 21, 1994 through April 3, 1994, no subsequent agreement to pay additional compensation was executed.
3. The plaintiff was initially diagnosed with a right bicep strain and was later diagnosed by Dr. Talley E. Lassiter, Jr., an orthopaedic surgeon, with rotator cuff tendonitis, bursitis and Type III acromion.
4. The plaintiff was involved in a motor vehicle accident on April 22, 1992, the day after she returned to work. The vehicle in which she was traveling was rear-ended. The plaintiff was treated at Pitt County Memorial Hospital complaining of neck and shoulder pain. Dr. Lassiter examined the plaintiff on the date of the accident and released her to return as needed.
5. On May 12, 1992, the plaintiff sought treatment with Dr. Helen E. Harmon, a rheumatologist, who ordered an EMG and a nerve conduction study. Those studies revealed bilateral carpal tunnel syndrome, right greater than left with no evidence of a superimposed right cervical radiculopathy.
6. The plaintiff was referred to Dr. Christopher Barsanti, an orthopaedic surgeon, who performed a right carpal tunnel release and right shoulder subacromial injection on August 20, 1992 and a right shoulder subacromial decompression on October 6, 1992.
7. The plaintiff was treated by Dr. Sanford Vemick for chronic pain management. He felt the plaintiff might have a superimposed peripheral neuropathy; however, the plaintiff was examined by Dr. J. Gregg Hardy, a neurologist, on May 21, 1993 who ordered more extensive testing which did not confirm peripheral neuropathies.
8. Dr. Barsanti performed a left carpal tunnel release and decompression of plaintiff's median nerve and ulnar nerve on September 14, 1993. On February 21, 1994, Dr. Barsanti performed an ulnar nerve decompression on the plaintiff's right elbow.
9. Defendant-employer has accepted liability for plaintiff's right bicep tendonitis but denied liability for plaintiff's left arm, wrist and shoulder condition. Defendant has paid medical compensation for plaintiff's carpal tunnel syndrome to the right hand and for the right shoulder treatment.
10. As a result of the work assigned, plaintiff has contracted right carpal tunnel syndrome and other injuries which are due to the causes and conditions characteristic and peculiar to the employment and which are not ordinary diseases of life to which the general public is equally exposed. Dr. Christopher M . Barsanti, an orthopaedic surgeon and one of plaintiff's treating physicians, was of the opinion that plaintiff's right carpal tunnel syndrome and right impingement syndrome all resulted from an overuse of the right extremity of the same type that caused plaintiff's initial strain or pain in the right bicep area.
11. On May 20, 1994, the plaintiff complained to Dr. Barsanti of a three week history of left shoulder pain. Dr. Barsanti opined that the plaintiff's left shoulder complaints were not related to the compensable injury to the right shoulder dating back to March 2, 1992.
12. On August 3, 1994, Dr. Barsanti assigned a ten percent (10%) permanent partial impairment rating to plaintiff's right shoulder, a five percent (5%) permanent partial impairment rating to the right elbow and a five percent (5%) permanent partial impairment rating to the right hand.
13. On August 17, 1994, the plaintiff was examined by Dr. David Tomaszek, a neurosurgeon specializing in spinal surgery, who assigned a fifteen percent (15%) permanent partial impairment rating to the right arm and a twenty percent (20%) permanent partial impairment rating to the left arm based on peripheral nerve injury. Dr. Tomasek did not rate plaintiff's shoulder. Greater weight is accorded to the ratings of Dr. Barsanti.
14. The plaintiff has received all temporary total disability benefits due for the time out of work since the date of the injury.
15. The plaintiff has not received permanent partial disability benefits for the right upper extremity injuries.
16. The greater weight of the medical evidence in the record suggests that the plaintiff's work as a deck laminator did not expose her to a greater risk of developing left carpal tunnel syndrome than the public in general. Further, the Full Commission finds that the greater weight of the medical evidence in the record does not support the plaintiff's contention that her left shoulder condition is an injury by accident or occupational disease which is due to the causes and condition characteristic of and peculiar to her employment with the defendant-employer.
The foregoing stipulations and findings of fact engender the following:
CONCLUSIONS OF LAW
1. The plaintiff contracted an occupational disease on or about March 2, 1992 which was due to causes and conditions characteristic and peculiar to her employment and not an ordinary disease of life to which the general public is equally exposed. Defendant accepted compensability for tendonitis of plaintiff's right bicep. Plaintiff's subsequent right carpal tunnel syndrome, right cubital syndrome and right shoulder impingement are direct and natural consequences of plaintiff's March 2, 1992 right extremity injury and pain problems and are also compensable. As a result of plaintiff's compensable occupational diseases, plaintiff is entitled to permanent partial disability benefits for a fifteen percent (15%) permanent partial impairment to the right arm and a five percent (5%) permanent partial impairment to the right hand, as assigned by Dr. Barsanti on August 3, 1994. N.C. Gen. Stat. § 97-31.
2. As a result of the compensable right arm and right hand injuries, the plaintiff is entitled to have defendants pay for medical expenses incurred or to be incurred in the future to the extent that such treatment tends to effect a cure, provide relief or lessen plaintiff's disability.
3. The plaintiff has failed to prove by the greater weight of the evidence that her left carpal tunnel syndrome or left shoulder condition is due to an injury by accident arising out of and in the course of her employment or the result of an occupational disease.
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
AWARD
1. Subject to a reasonable attorney's fee herein approved the defendants shall pay permanent partial disability benefits to the plaintiff at the rate of $178.41 per week for 36 weeks for the fifteen percent (15%) permanent partial impairment rating to the right arm and permanent partial disability benefits at the rate of $178.41 per week for 10 weeks for the five percent (5%) permanent partial impairment rating to the right hand which is causally related to plaintiff's initial March 2, 1992 occupational disease. These sums have accrued and shall be paid in a lump sum.
2. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded herein is approved and shall be deducted from the sums due the plaintiff and paid directly to the plaintiff's counsel.
3. Defendants shall pay all medical expenses incurred or to be incurred in the future as a result of plaintiff's compensable carpal tunnel syndrome, cubital tunnel syndrome, right shoulder impingement, right bicep tendonitis and other right extremity conditions when bills for the same have been submitted and approved according to procedures adopted by the Industrial Commission.
4. Defendants shall pay the costs including deposition costs.
 S/ ________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ __________________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ __________________________ LAURA K. MAVRETIC COMMISSIONER
BSB:jth